Court. May it please the Court. The case today concerns the Court's ability to review governmental pre-procurement decision-making processes. Counsel, do I appreciate that one of your arguments is that the lower court didn't even address your RAMCOR argument, for lack of a better way to explain it that's concise, I think. I understood that you had previously argued that you weren't just challenging or protesting the general contractor's choices of who they subcontracted to, but rather you were protesting the United States government's ability to delegate that authority. Is that right? Is that part, would that be an accurate synopsis or tell me where I'm wrong? No Judge Moore, I believe that that's accurate. You might have been challenging both, but one of your challenges was clearly to the government delegating the authority. That was clearly, and it's one of the counts on our complaint, that clearly was one of our challenges. And I don't know whether it's a refined, I don't know that it's a separate argument that we're hoping to make today, but that is, it's not just the delegation of the authority, and I think that is an end product of what happened here. But it's the earlier decision made by the government as to its procurement method, one of which resulted in, or in this case... Not having the government issue contracts directly, but rather deferring... Through a lead systems integrator. Yes, Your Honor. Under the statute, 11491B, in order for you to attach jurisdiction down below, you've got to make a non-frivolous allegation of a violation of a statute or a regulation in connection with a procurement or a proposed procurement. Yes, Your Honor. Now, what are the specific statutes and regulations that you believe were violated by the, not by the letting of the contract from the one person to the sub, but by the government itself in setting up how this contract was going to play out? I'm looking at count one in your complaint, at A38. I'm trying to find the specific statutes and regulations that you believe have been violated. What we believe, Your Honor, and what we allege in our complaint, and I believe it's in paragraph five in the jurisdiction and standing section, was that the Competition and Contracting Act, the failure to engage in full and open competition, as required by the Competition and Contracting Act, is one violation by the government's decision to try and procure through the lead systems integrator. Well, what else? What's this business about bundling? Is that a regulation or a statutory requirement? It is. Through the Small Business Act, section 15 U.S.C., I'm sorry, 15 U.S.C. section 631 J3, there is a prohibition against improper bundling. There are also regulations prohibiting that fact. I believe they are in section part six, and in fact it may be in subpart 7.5, but the bundling here was the taking of two software procurements that previously had been separately competed, and in this case they were bundled through the use of the lead systems integrator, as opposed to the follow-on procurement, in this case, and the prior procurement. So if the United States government was negotiating with Dell or somebody that makes mainframe computers and said, the Defense Department said, we want you to supply us with specific mainframe things, great big machines, and then said to Dell, if you want to go buy parts from anybody you want to, that's okay with us, you would think that would violate some law. You can't let the contractor sub out on his own? I think there is a difference, Your Honor, and I appreciate the point that we're getting to. I mean, it's going to the merits of your argument, not the jurisdiction point, but I just. It is, and that's part of our problem here, is we are dealing with a somewhat incomplete record, as we pointed out, in terms of what actually happened and the decisions that were actually made, because there really is nothing in the record as to how we got to this point. But to address Your Honor's question, I do believe there's a difference between chips, processor chips, parts of a computer, and what happened here, which is the heart of the procurement, obviously, is the software that's going to run the grants management program and the acquisition programs for the government. And that is what was procured here, not pieces of a system. Let me ask one question. In count five of your complaint, you complain about the failure to use competitive bidding, allowing SRA, this was like the prime, to select and purchase software from whoever it wanted. I read, if you look at the opinion below on page A7 in the record, Judge Marrow says that the obtaining, basically what happened was they added JAM software requirements to the viable protest, and Marrow answered that saying adding work to an existing contract that's within the scope doesn't present a procurement protest basis. Is that, is your count five, was your count five, in essence, washed out by this language in the opinion I just cited? I don't believe so, Your Honor, because again, what we're challenging is not the adding of work, it is the decision of the government to add the work to SRA's task order and procure the software through SRA, as opposed to selecting another method. And before doing so, before selecting through SRA, the government was required to engage in organizational conflict of interest analyses, bundling analyses, whether competition was appropriate for this procurement or not, having done, if we believe, had it done those things, there would have been a different method of procurement provided. Okay. Have you got an explanation for how a distinguished judge down below missed your RAMCOR argument? And Judge Marrow, as a former justice attorney, Judge Marrow is quite distinguished. I agree with you, and I was surprised, frankly, Your Honor. Well, I mean, I got, I pulled up your opposition to the government's motion that's missed because in your appendix, you didn't give us the section that dealt with RAMCOR, but clearly enough, you had 10 pages or so in there saying that the language in RAMCOR is very broad, we've raised legal challenges, we have standing, you know, personal standing. That's right. And I don't have an explanation other than, Your Honor, what we're, the government never addressed it either. In the briefs, of all the briefs that the government has submitted, not once has the government offered an explanation for the meaning of the language that we are challenging. Violation of a statute of regulation in connection with a procurement or a proposed procurement. A proposed procurement has to have some meaning in the statute, and we believe that is the language that allows the court to review these pre-procurement decisions of the government because without that ability, there would be no review of whether or not the government ever engaged in these required analyses before it decides its method of procurement. And why the court failed to address that... Well, it could go to the government theoretically. Well, your concern is that the government can go to a shell prime, if you would, that's just nothing but a piece of paper, a construction company, and give the contract to the Clevenger Construction Company that's never constructed anything, and then Clev will simply sub everything out. That's exactly right, Your Honor, and I believe if we are allowed to develop a record, in this case, from the limited information that we do have, I think that you will see with source selection authorities that are all government employees. Well, it's rather important to you, is it not, that if we decide your way on the jurisdictional issue, that we make certain that Judge Merrill has an opportunity to readdress the question of whether he should open the record. It is extremely important, Your Honor, and we do not, we would ask if we're granted... Well, he seemed to recognize that himself, in his opinion. In response to your request to broaden the record, he said these issues could merit inquiry if jurisdiction were present. I agree, Your Honor. I think Judge Merrill did recognize the limited record here. For example, there is no information in the record to indicate how the government actually tasked SRA with the procurement responsibilities that it ultimately provided. There is no piece of paper, there is no document of any kind saying... If you worked for the agency, you wouldn't have put the piece of paper in the record either. You may very well be correct, Your Honor. What I would suggest is that there is no piece of paper to put in the record. Why burden the files with too much information? I think the answer is, Your Honor, in all honesty, is that there is no piece of paper to put in the record. Well, we don't know. They just didn't do it, nor did they do any of the required analyses, and that's why that information is not in the record either, because it simply doesn't exist. And again, had they conducted these analyses, we believe, particularly the organizational conflict of interest, in light of what happened here, where they ended up hiring a Canadian company with no history of production in the federal government, instead of a company that was already in production with the very same type of software for another agency, where they hired a company on whose board of directors sits a former SRA chief executive. Counsel, all this goes to the merits. It does, Your Honor. Let's try and keep our eye on the ball here. Yes, Your Honor. We're deciding only jurisdiction. So what other arguments would you like to make to us with regard to jurisdiction? Your Honor, with regard to the language in connection with the proposed procurement, I think that the case law that's been developed, certainly based on RAMCORP, where the court has determined that the in connection with language is sweeping in scope and certainly not limited to bid protest cases. It, in fact, does not require any actual procurement that an actual procurement could challenge. The RFI is enough. Excuse me? The RFI is enough? I think Your Honor, in this case... What if there was no RFI? Would there still be a right to bring an action under 1491 based on the in connection with language? If you had the facts that are in play here, then I think the RFI, while here, I think the facts of this case make it readily apparent that a procurement decision had already been made, and it was simply a method of choosing how the procurement would be handled. That's the key inquiry here. Was there a proposed procurement? Was there a procurement decision made? And then the government selects which way it would go. And in this case, the first RFI specifically says, it's not for market research. It's for the purpose of acquiring software. And so when we know that, the RFI simply is defining the parameters and selecting the type of software that the government will be eventually using here. And so for that reason, I think in the facts of this case, there is ample evidence to be sure that we are addressing the government's pre-procurement decision making. They had already decided to procure, and they could have competed the software, they could have sole sourced it, or they could have done it the method that they chose. Now, I imagine opposing counsel is going to get up and say that this was all just covered under their original contract. So what would your response to that be? At SRA, and I think in fairness in the Millennium Contract, as broadly drafted as it is, there may be some reference to procurement responsibilities. But what happened here is the government made a decision. It made a decision early on to award SRA a task order. That's fine. That's not what's at issue here. It made a separate procurement decision when it knew it needed new software. It went to SRA and said, you go get this for us. And we know that in part because of the RFI. Yes, ma'am. Yes. That's exactly right. And I see that I'm well into my rebuttal time, so I would like to save a few minutes. We'll save it for you, Mr. Coulter. Mr. Dunn. Thank you, Your Honor. Mr. Dunn, why isn't there clearly jurisdiction here? You've got an interested party. It's in connection with a procurement or a proposed procurement. It seems pretty clear-cut. Your Honor, they're not an interested party because they don't challenge the scope of the task order. And they're not one of the nine prime contractors under the millennia contract. They've specifically stated in their briefs that they're not challenging the task order or the work added to the task order. But they're a putative subcontractor. They lost out here, or they might have lost out. Your Honor, they lost out based on the work that was being subcontracted by a prime government contractor. Where do you get your definition of interested party? Your Honor, it's – well, I don't have an exact site, but I believe – Well, don't you need one? Excuse me? Don't you need one? I mean, if you're going to stand up here and tell us what an interested party is and say that your adversary client doesn't amount to one, you'd have to tell us why. Yes, Your Honor. And I believe to be an interested party, they have to have standing. And they also have to be prejudiced. Well, that's circular. That's circular. What do you mean they have to have standing? You mean they have to be a party to the contract? Yes, they have to be able to bid. By definition, there's no contract here. Have they previously supplied comparable software services to the United States government? That's what they allege. Yes, absolutely. They allege that. Absolutely. Is there any reason to believe they're not in a position to offer to supply similar services to the government now? Your Honor, they're not. Of course you know that they are standing. They wouldn't be here. They aren't – for jurisdictional purposes, they can't directly challenge the SRI subcontract, if you will, to the two entities that supply the software. Because that's not a government contract. They know that. And so they say we're not directly attacking that. But, oh boy, are they indirectly attacking it. Because what they want to say is the whole scheme of letting SRI decide for itself who it wanted to get software from is illegal. And if they can establish that, and if then the contract goes out competitively through SRI and out to the subs as well, they'll be standing in line to compete. So how could they not be an interested party? Your Honor, based on the Federal Acquisition Streamlining Act, the court doesn't have jurisdiction because this was a task order. Now how could they not be an interested party? This was work that was within the scope of the task order. And they could not bid upon that work because that was within the scope of our existing task order. They're talking about – they aren't talking about trying to bid now. They're talking about a brand new solicitation that's going to happen in the new millennium. Everything that's been – if they win, everything that's been done so far is going to be thrown up in the air. Finished. Gone. Flushed. They're going to start fresh. And they're going to be standing in line making a competitive bid. Now you told me earlier, you said, well, there's no jurisdiction because they're not an interested party. And I'm asking you again to tell me, why are they not an interested party? Well, Your Honor – It wouldn't hurt you, I mean, if you wanted to kind of concede and say, yes, they are an interested party and, you know, move on. It wouldn't hurt you any. But if you want to stand there and try to tell the court that they're not an interested party, and you can't even – I'm not trying to trust you on the it wouldn't hurt you end, but you've got to come up with an answer nonetheless, or it's going to – Well, the bottom line, like I've already said, is that there was an existing task order. And because this work, as they acknowledge in their response brief or their reply brief and their initial brief, they don't contend that it was outside of the scope. But, counsel, the government issued an RFI. So clearly you have to acknowledge the government considered the possibility of procuring all of this subcontracted work directly itself through a contract. I mean, it may well have had the option to give it to SRI. That kind of goes to the merits, though. But clearly the government considered the possibility of opening up bids and solicitation and it reached out to the community vis-à-vis the RFI. Am I right about that? Yes, Your Honor. So now we have a proposed or possible procurement that the government is considering and they're collecting information on that basis. I mean, that's what the statute says. But, Your Honor, after receiving the responses to the RFI, the government specifically made the determination that it was within the scope of the existing task order. And that is why they just tasked them with that. But what happens if that decision was against the law? If the implementation of that decision was against the law?  It can't be protested. Not if it's within the scope of the task order. Your Honor, the FASA, Federal Acquisition Streamlining Act, specifically prohibits bid protests to task... I may have missed something, but I thought Distributed Solutions was saying at the point in time when you're going to push this work out through an existing task order, that's against the law. Can't do that. That's the gravamen of their case, as I understand it. They're saying, when you thought, we got you, we're going to just take an existing task order and add this other stuff on it and tell SRI to go do these things. Game's over from your point of view. From his point of view, game just started. Because he's saying, I think that would broke the law when you did that. You broke the law because you gave SRI authority that it can't properly execute. Right? That's one of their theories. That's one of their allegations. But if they're right, if they're correct, that the task order vested SRI unlawfully, if they're right about that, which you might find out if you ever got to the merits, well then, that task order would go up in the wind, wouldn't it? Your Honor, presumably, if they're right about that, if we get to the merits, but the problem for their case is they don't have jurisdiction. The Federal Acquisition Streamlining Act, the whole purpose of that was to streamline the process. That's just a conclusion, and we're looking at the premises. I think you would have to agree that in their complaint, they allege that the promulgation of the adding work to the existing task order violated the law. That's what their counts one through six say. Yes, Your Honor. I agree that's what their counts say. Now, did you move to strike those counts as frivolous? No, Your Honor. Okay. So they're non-frivolous allegations of violation of law in connection with a proposed procurement. But, Your Honor, we don't agree that this is a proposed procurement. The RFI was issued, then it was determined that it was within the scope of the existing Prime 2.2 task order. I guess that's the problem. What's the difference between a procurement and a proposed procurement, then? Well, I don't think for purposes of 1491B there is a difference. Wait, wait, wait. Congress, I mean, come on, counsel. You're credentialed and you know tools of statutory interpretation much the same way I do, and Congress decided to say in connection with a procurement or a proposed procurement. I mean, that's the language Congress chose to put into 1491. You can't stand here and tell me that they intended it for it to be duplicative and for a proposed procurement to have no independent meaning apart from a procurement itself. Well, the RFI that was issued stated that it was only for informational purposes. So this is not, I mean, the RFI itself is not a proposed procurement or a procurement. But weren't they collecting the information to assess how to allocate the work? Wouldn't that be a proposed procurement? Not in this case, Your Honor, because they were just collecting information. But what is a proposed procurement, then? Because we know what a procurement is. That's clear. So what would fall within the bounds of the definition of a proposed procurement? It would have to go further than what happened here. An RFI was issued for informational purposes only. Maybe if there was an RFP issued subsequently, in that case that could obviously... An RFP, and what would the RFP say in it? A request for proposals to... Wouldn't that be an actual procurement as opposed to a proposed one when they're requesting the proposals? Wouldn't that fall within the first definition? My trouble here is I'm having difficulty if this isn't a proposed procurement, I'm having trouble figuring out what is. Because what you just described to me, it seems to me, would be part of an actual procurement. When they actually start the process of soliciting the bids for the actual contract they're going to award, that seems to me to fall within actual procurement as opposed to a proposed one. Because a proposed one implies something that might not go forward. Something they might choose not to actually solicit bids on. I'm just trying to appreciate because it seems to me your case stands or falls on this. The interested party thing we're struggling with, too, in terms of you're disputing it, but there's interested party in connection with a procurement or a proposed procurement. Your Honor, in this case, there was no proposed procurement because they stated specifically it was for informational purposes only and that there could very well be no contract awarded. And further, Your Honor, if they were going to challenge it, they should have challenged it. What does informational purposes only mean? If it's for informational purposes, it can't be a proposed procurement? What happens if the Secretary of Defense says we are putting out information that we are proposing to acquire airplanes from so-and-so? Isn't that a proposed procurement? Potentially, Your Honor, but that's not the fact here. The fact here is that the 2005 RFR stated that it was only for the purpose of doing market research, that it would not result in a contract award, and it did not contain evaluation criteria. So your view is it was too early, too tentative to count as a proposed procurement? Absolutely, Your Honor. There's nothing else. There's very little else that they could have put in there to make it more clear that it was not a proposed procurement. Well, then how would a contractor – is there any way? And perhaps there's no way. Perhaps the government hasn't waived sovereign immunity with regard to this. You can tell me that, and that's fine. But how would a contractor ever then protest? What if the government just starts all the time, all the time, instead of actually soliciting bids? It avoids all of these very detailed requirements that the government is forced to comply with in order to all the time, instead, they set up a shell corporation, basically. There is a shell corporation somewhere, and the government just constantly feeds everything to them, and then they reach out and actually award the work. It seems that that would be wrong to me. I mean, you know, maybe wrong but not sovereign immunity hasn't been waived to it. I don't know. What do you think? The concept of a shell corporation couldn't be further from the truth than what occurred in this case. SRA was one of the prime subcontractors with the government under the Millennium Contract. They've been doing work under the Prime 2.2 task force since 2003. They were... I don't disagree with anything you're saying. The problem is that if we establish a rule in this case that says no jurisdiction, then there's no ability for anyone to challenge the bad hypothetical I gave you, which I agree with, not the facts of this case. But there's no ability for anyone to And I kind of think Congress may have intended to cure that with its proposed procurement language, which is, if there's an alternate way that people in that situation of the really bad one I just described to you would actually be able to protest tell me what it is. They could allege, well, the only thing under FASA is that it's beyond the scope, that it's beyond the duration, or that it's beyond the funds. And if they're going to make a challenge, such as they allege here, they should have made it earlier. They shouldn't take a wait-and-see approach. That's what they did. They waited to see if they'd lose. And then they raised these issues. That's exactly what happened in Blue and Gold. And that's what they're trying to do now. They're unraveling the entire process by doing this. You're saying that there was no proposed contract. Was that what the trial court held or did the trial court hold that disappointed some subcontractors and not afforded protest rights? I almost quoted verbatim from the court's conclusion. It seems a little different from your idea that there isn't a proposed contract. Page 8, last paragraph, the accordingly paragraph. Since 1491B provides procurement protest jurisdiction to this court over procurement's disappointed subcontractors and not afforded protest rights, that gets to interested parties, not to whether there was a proposed contract. I believe what the judge was referring to there is a disappointed subcontractor to SRA, not to the government. And that's between SRA... Because there's no government contract. Yes, Your Honor. In other words, they're not interested parties. Yes, Your Honor. Walk us through sort of what happened. My understanding was that there was the RFI. The government said we're thinking about buying some software. Is that right? Yes, Your Honor. And they said we're thinking about buying some software by going directly to suppliers of software. Yes, Your Honor. And it said that RFI starts at A118. A22? A118. So at that stage in the game, the agency's saying we're interested and we're proposing to buy software from people that we've either bought software before or the way we've done it before. They were looking, I believe, they say the purpose for this request for information is to research possible commercial off-the-shelf acquisition and assistance solutions for JAMS, which is Joint Acquisition and System Management System. So they sort of open up, tell the world we need software and we're contemplating buying it directly from these people. They wanted help in determining how to integrate the systems for their acquisition and assistance. So they're saying we may not be proposing a procurement now, but we're getting ready to propose a procurement. We want to propose a procurement. I wouldn't take it that far, Your Honor. I think it was just simply a request for information because they specifically state that it's for market research purposes only. This RFI will not result in a contract award. That's on A121. So it's just market research purposes only. But was there no ultimate contract? No, Your Honor, there was no ultimate contract. It was simply determined there was an RFI issued by SRA There was no award for this subject matter? No, Your Honor. It was determined that that was within the scope of the existing Prime 2.2 task order. Well, you've consumed your time. Thank you very much, Mr. Dunn. Mr. Coulter has a little rebuttal time. So was there no proposed contract because it was already within the scope of an earlier contract and therefore the interested party question is moot? No, Your Honor, and I believe the language that you asked counsel for the government to address, the language from the court's opinion on page A8 of the record, actually dealt with our alternative jurisdictional argument that we had presented at the GAO. Whether the SRA was a federal agency. Is that the one? That the procurement was by or for the government under the test established in the Senate. Whether the SRA was effectively a federal agency. Where is the proposed procurement? This is what I'm struggling with too. Why is there a proposed procurement when they actually issue an RFP and say we're soliciting bids now? I mean, clearly that's not an actual procurement at that point, is it? I'm struggling with this. And I think if you look back at the statute There was the request for information, right? Yes, Your Honor. And we're not arguing that that was a proposed procurement. Not in and of itself. So the request for information doesn't count. Now what else was there? There was never an RFP, right? That's right, Your Honor. There was no RFP. Let me just walk through the facts very briefly. On June 27th of 2005, there was the RFI. It certainly said that it was for market research only, but it clearly also said on page A121 that it was for the purpose of acquiring software. In addition there were demonstrations given by all vendors in early July and I think through the second week of July. By August 12th the government issued a statement on the web that said we have decided to pursue alternative courses of action. And on that same day SRA issued a quote, RFI of its own. But if you look at that RFI it really was the functional equivalent of an RFP. The vendors made the same submissions to it they made the same demonstrations and there was never an RFP before selection. Let me just slow down for a second. Yes, Your Honor. So what happened was that on August 12th the government changed its mind and said we're not going to go like the request for information which suggested we were going to go competitive off the line. That's right. We've got an existing contract with SRA and we're going to push the software needs through and let SRA decide how to do it, right? Yes, Your Honor. Now that was an existing contract for SRA at the time, right? It was. Now the Judge Merrill addressed that issue in his opinion by saying I've got the language underscored here I think it's important Judge Merrill says that ok, adding work to an existing contract that's within the scope of the contract doesn't raise a viable procurement protest based on lack of competition  Now isn't he correct on that proposition? First of all Let's stick with me. Isn't he correct that if what you were doing was adding work to an existing contract that's within the scope of the contract that that fact that it occurred doesn't give someone who might otherwise have standing to protest. It doesn't give them a ground to protest. I think if those are the facts, Your Honor, is correct what we don't know is that at this early stage whether those are even the facts in play. Just wait a second. So we don't know whether, did you challenge below the proposition that what happened here, the gift to SRI of this work was not within the scope of the contract and was not adding existing work that was clearly miniscule. We did in fact challenge that, Your Honor. As a matter of fact. We did. We did in fact. That is one of our counts in our complaint. In fact I'll tell you which count if I were more adept at Well, I didn't see you arguing on appeal that there was reversible error and the trial judge hadn't resolved that fact for you. It might take your appeal to be a RAMCOR appeal you know 100%. It is, Your Honor, because I think the judge reached a decision on the merits improperly where our appeal is to try to get to the jurisdiction. Right. Let's come back and find out where you In order for there to be jurisdiction, there has to be a contract or a proposed contract. Procurement or a proposed procurement. Counsel, could the problem in this case be that there simply isn't enough information in the record yet for us to decide whether the RFI and attendant acts amount to a proposed procurement? That is precisely what we argued below, is that there is some melding of the motion to supplement the record with the jurisdictional argument precisely because the record is so devoid of any evidence of why they made the decision, the government made the decision. So perhaps with a more developed record, the court below could then figure out whether it has jurisdiction analyzing this RAMCOR. I mean, interested party in connection with isn't troubling me nearly as much as procurement and proposed procurement and whether what the government did in this case arises to a proposed procurement. We don't have any real law interpreting those words. We really don't, Your Honor, and that's what my clients are very interested in because they are concerned about the very ramifications that you suggested for the future. And certainly there was some reasoning that the government went through. To do anything other than competitive procurement, the government has to document reasons why it's not going to do that. In this case, it either had to say sole source and we'll explain why, it had to go through organizational... Even if they're adding work in an existing contract that's within the scope of the contract? So the government contracts with Clevenger Industries to supply them with 10,000 pairs of combat boots, right? And then what they do is they come to me and they say, we want you to give 5 more thousand pairs of combat boots. More work within the scope of the existing order, right? And you make combat boots and you want to complain, oh, I should have got the contract for the next 5,000 boots. You don't have jurisdiction for that, right?  not on Your Honor's facts, but I think the facts here are different. First of all, the judge only dealt with below our failure to compete allegation. We also had the organizational conflict of interest and bundling analyses that the government... On my hypothetical, who cares? If the additional combat boots to Clevenger Boot Company are within the existing scope of the contract, then isn't the government just allowed to go ahead and buy more boots willy-nilly? I think it might in that instance, but the difference here, Your Honor, is you are dealing with adding work to a prime who then gets the primary source of the procurement from a sub and in that instance, it has to do that organizational conflict of interest analysis precisely for the reasons here because it ended up with conflicts that would have been prevented by... Let me ask you this question. Would you agree with the proposition, if one made the proposition, that when Judge Merrill ruled on your request to expand the record saying, I'm not going to expand the record, but if I had jurisdiction I might, you would say that he should have expanded the record in order properly to assess the jurisdictional issue? Obviously, we think, Your Honor, he has enough information based on our allegations to make the jurisdictional determination, but yes, I think certainly there ought to be... If the court below feels that it didn't have facts necessary to determine jurisdiction, then certainly the record ought to be supplemented so that we can make a fair determination of what really occurred here because there is nothing in the record to explain the government's deviation from its normal RFP process of competing this software. Thank you, Mr. Calder. I think we have your argument. Thank you very much.